### HOLLOWAY W. HUNT v. AURELIUS J. SWAYZE.

1. The clerk of the Supreme Court has no authority to certify, under the seal of the court, the hour of the day when the judgment was entered.
2. The day may be thus certified, and the presumption will be that the judgment was entered at the earliest hour when it could be entered in the usual course of the business of the office.
3. The exact time of entry may be proved, as matter *dehors* the record, by competent evidence.
4. Where there are disputed facts the intention to deliver a deed and the time of delivery are for the jury. The court can only conclude a delivery where it is a positive inference of law.
5. While a deed takes effect between parties from the time of delivery, it is void and of no effect against subsequent judgment creditors, without notice, until duly recorded. The vendee has not, in such case, fifteen days after delivery to record his deed, with preference. *Pamph. L.* 1883, *p.* 215.
6. While the power to sell lands by the sheriff under judgment and execution must be in strict pursuance of the power, no mere irregularities, such as are here shown, will invalidate his conveyance to a *bona fide* purchaser.

---

In ejectment. On rule to show cause and case certified.

Argued at June Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the plaintiff, *William H. Morrow* and *Joseph D. Bedle.*

For the defendant, *J. G. Shipman & Son.*

The opinion of the court was delivered by

SCUDDER, J.   The plaintiff claims title to the land in controversy under a deed of conveyance to him by the sheriff of Warren county, dated December 7th, 1889, founded on a judgment recovered by the Hackettstown National Bank against John T. Tinsman and Caleb Swayze, in the Supreme Court.   The judgment was entered, by default, May 24th, 1887, an execution issued upon it and levied on the land of Caleb Swayze, which is in controversy.   On the day of the entry of judgment, May 24th, 1887, Caleb Swayze and wife conveyed the same land to the defendant, Aurelius J. Swayze, by deed duly executed.

The main question raised at the trial was, Which has the priority, the judgment or the conveyance?   It was claimed, on the part of the plaintiff, that the judgment was entered in the office of the clerk of the Supreme Court, at eight o'clock in the morning.   The deed of conveyance was executed some time during the day, and recorded at half-past three o'clock in the afternoon, in the office of the clerk of the county.

As evidence of the time of the entry of judgment, the court admitted a certified copy of the record of the judgment, under the seal of the Supreme Court, attested by the clerk, that it was a true copy of the judgment in the cause as the same remained of record in his office; and that said judgment was entered at eight o'clock in the morning, May 24th, 1887.   It is denied that the clerk of the court has any authority to certify the hour of the day when the judgment was entered.

Writs, processes and other proceedings attested by the seal of the Supreme Court shall be held valid and effectual.   *Rev.,* *p.* 746, § 16.   But only such matters as may be legally included in the record can be thus made valid and effectual.   The usual form of entering a judgment in the book of records relates only to the day of recovery.   The hour of the day is

not stated in the records. The *ideo consideratum est* refers to the day and not to the hour.

By statute the clerk of the court is required to make a complete record of the proceedings and judgment in the cause in a book, which entry shall constitute the record, and shall be signed by one of the judges of the court as of the day when the judgment was entered. *Practice Act,* § 192 ; *Rev., p.* 877 ; *Judgments,* § 4 ; *Rev., p.* 521. Until the clerk shall enter the proceedings and judgment, the verdict or the rule for judgment in the minutes of the court shall be held and taken, in the court in which the same is obtained, to be the record of the judgment in such cause, and shall be received in evidence in said court, as such judgment, as fully as if the record had been made up and signed as by said section (192) required. *Section* 194.

It was not competent to contradict the record and prove that the judgment was not signed by the judge before the commencement of the action, as was attempted at the trial. *Den* v. *Downam,* 1 *Gr.* 135. That was conclusively attested by the seal of the court as the certificate of the clerk.

. But the record in either form, whether in the book or in the minutes, is made by the terms of the statute as of the day when the judgment was entered. The fraction of the day is not regarded in the record; and does not form a part thereof, so that it can be authoritatively certified under the seal of the court. The rule seems to be general, that where an officer's certificate is made evidence of certain facts, he cannot extend its effect to other facts by stating these also in the certificate, but such parts of the certificate will be repressed. 1 *Greenl. Evid.,* § 498. But such entry of the hour and even of the minute may be made on the book, and in the minutes as matter *dehors* the record. It is often important that the exact time of entry should be known in determining the priority of encumbrances, judgments and conveyances; and it is a proper and common usage to make such particular note of the time. But it is a matter *in pais* to be used and proved as any similar memorandum made by an officer of the court in the dis-

charge of duties not required by statute or the practice of the court. It may be used by the person making the entry to refresh his memory, when thus made; and it must be authenticated by the ordinary rules of evidence, and cannot be conclusively certified by the seal of the court.

The importance of the time of the entry of judgments in passing title to lands is established in our statute, which enacts that "no judgment shall affect or bind any lands, tenements, hereditaments or real estate, but from the time of the actual entry of such judgments in the minutes or records of the court." *Rev.*, *p.* 520, § 2.

By the common law all judgments relate to the first day of the term, and the priority of one of two judgments signed on the same day could not be averred. *Porchester* v. *Petrie*, 3 *Doug.* 261 ; 2 *Tidd* 932.

By the statute of 29 *Car. II.*, c. 5, §§ 13–15, all judgments entered in the courts of Westminster Hall, as against purchasers of land, &c., shall in consideration of law be judgments only from the time they are so entered. This agrees with our statute above referred to.

In *Wright* v. *Mills*, 4 *Hurlst. & N.* 488, where judgment was signed at the opening of the office at the usual hour, eleven A. M., and the defendant died at half-past nine A. M. on the same morning, it was said that judicial proceedings are to be considered as taking place at the earliest period of the day on which they are done.

In *Hoppock* v. *Ramsey*, 1 *Stew. Eq.* 413, where the contest was between a judgment creditor and a *bona fide* purchaser of land, fractional parts of a day were regarded, and the matter was referred to a master to take further proofs to establish the priority of the judgment. This is in accordance with the practice of our courts, and is necessary to protect the title of *bona fide* purchasers of land. The law will regard the fractions of a day where attention to such fractions is necessary to the due administration of justice. *Johnson* v. *Pennington*, 3 *Gr.* 188 ; *Campbell* v. *Strangeways*, *L. R.*, 3 *C. P. Div.* 105 ; *Clarke* v. *Bradlaugh*, *L. R.*, 7 *Q. B. Div.* 151. It would be

an injustice to such purchasers who, after searching and finding no entry of a judgment against the owner, take the title, if a judgment entered at a subsequent hour of the day should be held conclusively to relate to the earliest period of the day on which the judgment was entered, and thus antedate the conveyance. The most that can be claimed for this fiction of the law in favor of the entry of judgments is, that the record is but presumptive evidence of the entry of the judgment at the earliest hour of the day when an actual entry of a judgment may be made in the usual course of business.

Besides the exemplification of the record of the judgment, certified by the clerk under the seal of the court, the plaintiff offered as a witness one of the clerks in the office of the clerk of the Supreme Court, who testified to the custom in the office of sending for the mail early in the morning, and the return of the office boy, usually at about half-past seven, and the subsequent entry made by him when he reached the office, sometimes as early as eight o'clock, usually about nine o'clock in the morning. The witness had no definite recollection of the time of entry of this judgment, and says it was made in the handwriting of another clerk. While this was not sufficient without the production and proof of the book or paper on which the entry was made, to prove the time of the actual entry of the judgment so as to give it priority over a conveyance recorded on the same day, it did not vary or contradict the presumption that the judgment was entered at the earliest hour of that day when it could have been entered. The proof, as it stood, was sufficient to call on the defendant to show that his deed was recorded before the judgment under which the plaintiff claimed title was actually entered. There was no such evidence offered.

It was further insisted by the defendant that his deed took effect from the time of its delivery to him on the 24th of May, and evidence was offered to show that it was signed by Caleb Swayze at six o'clock in the morning; that it was left in the defendant's safe until about noon, when Swayze again took it, and procuring an officer went with him to his residence, where

his wife signed the deed; both acknowledged it, and it was taken to the office of the clerk of the county at Belvidere, where it was recorded at half-past three o'clock in the afternoon. Upon this proof, with the accompanying facts and expressions of the parties, the intention to deliver and the time of delivery were questions of fact for the jury, and the court could not direct a verdict for either party founded on the time of the delivery of the deed. This can only be done where the delivery is a positive inference of law. *Jones* v. *Swayze,* 13 *Vroom* 279; *Cannon* v. *Cannon,* 11 *C. E. Gr.* 316, 319; *Ruckman* v. *Ruckman,* 6 *Stew. Eq.* 354; *Terhune* v. *Oldis,* 17 *Id.* 146. But the direction of the court did no harm to the defendant, for while the deed took effect between the parties from the time of its delivery, it was void and of no effect against subsequent judgment creditors, without notice, until duly recorded in the county where the lands lie. *Pamph. L.* 1883, *p.* 215; *Rev. Sup., p.* 135, § 20. If, therefore, the judgment under which the plaintiff claims title was entered at any time prior to half-past three o'clock in the afternoon on that day, without notice of the defendant's deed, although subsequent to its delivery, he has the prior title. The defendant's counsel probably supposed that his deed would have priority if recorded within fifteen days after its execution, as the law formerly was, but the statute above referred to has changed the rights of the party receiving a deed as to this delay in recording.

The other objections relate to alleged informalities in the conveyance to the plaintiff. It was executed by the sheriff with the addition to his name of "late sheriff;" but it appears in the recital that there was a regular judgment and execution levied while he was in office, the sale was advertised in legal form, but continued by public adjournments after his term of office expired and a sale made at a time and place of which due notice was given. It was therefore not an unexecuted writ, which he was required by the statute to turn over to the succeeding sheriff. *Rev., p.* 1105, § 35. The term "unexecuted writ" means one on which nothing has been done. If

he has begun to execute it he must continue it even after he is out of office. *State* v. *Hamilton*, 1 *Harr.* 153. It need not appear that he first levied upon and sold the goods and chattels, or that there were none on which levy could be made. The writ commands the sheriff to levy and sell lands, in case no goods can be found, and the presumption is that he did his duty. *Force* v. *Gardner*, 14 *Vroom* 417. The continuance of adjournments and the change of the place of sale by public notice will not invalidate the sale and conveyance to a *bona fide* purchaser. *Penn* v. *Craig*, 1 *Gr. Ch.* 495, 499; *Rev., p.* 905, § 6; *Allen* v. *Cole*, 1 *Stock.* 286; *Hewitt* v. *Montclair R. R. Co.*, 10 *C. E. Gr.* 392. The affidavit of the sheriff is annexed to the deed which was approved and ordered to be recorded as a good and sufficient conveyance of the land and real estate therein described, according to the statute. *Rev., p.* 1045, § 13.

While the execution of the power to sell by a sheriff must be in strict pursuance of the power, it is the policy of the law to protect the rights of purchasers in good faith at judicial sales, and no mere irregularities in making the sale, where any such are shown, will invalidate conveyances to such purchasers.

The rule to show cause will be discharged.